UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHESTNUT HILL HOSPITAL, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04-1128 (RWR) |
| TOMMY G. THOMPSON, Secretary, United States Department of Health and Human Services, | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

MEMORANDUM OPINION

This dispute concerns whether Defendant Secretary of the Department of Health and Human Services (the "Secretary") must reimburse Plaintiff Chestnut Hill Hospital (the "Hospital") for certain medical education costs that the Hospital incurred during the time its family practice residents spent rotating to non-hospital settings in 1999 and 2000. The Secretary has applied a federal regulatory "written agreement" requirement, *see* 42 C.F.R. §§ 413.86(f)(4)(ii), 412.105(f)(1)(ii)(C) (1999 & 2000), to deny such reimbursement.

The Hospital contends that the Secretary exceeded his regulatory authority in developing and applying the "written agreement" requirement. During the time period here relevant (1999 and 2000), however, Congress (1) authorized (indeed, required) the Secretary to "prescribe such regulations as may be necessary to carry out the administration of [among other things, the relevant reimbursement provisions]," 42 U.S.C. § 1395hh(a)(1) (1999 & 2000), and (2) barred the Secretary from making payments "to any provider [e.g., a hospital] unless it has furnished

such information as the Secretary may request in order to determine the amounts due such provider," 42 U.S.C. § 1395g(a) (1999 & 2000).

Alternatively, the Hospital argues that, even if the Secretary did possess authority to implement the "written agreement" requirement, (1) Section 713 of the Medicare Prescription Drug, Improvement and Modernization Act of 2003, Pub. L. No. 108-173, barred him from enforcing that requirement in these circumstances and/or (2) it did in fact comply with that requirement. However, Section 713 is inapplicable to the time period here relevant and substantial evidence supports the Secretary's determination that the Hospital had not entered the required "written agreement."

## I. BACKGROUND

**A.     Factual Background.**

The Hospital operates a family practice medical residency training program. *See* Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue ¶ 4. During fiscal years 1999 and 2000, the Hospital rotated some of its family practice residents to non-hospital settings. *See* Defendant's Statement of Material Facts Not in Genuine Dispute ¶¶ 4, 5; Plaintiff's Concise Statement of Genuine Issues of Material Facts ¶¶ 4, 5.

Several facts are potentially relevant to whether the Hospital maintained the "written agreement" required by the disputed federal regulations. First, the Hospital's By-Laws (which were written) conditioned membership on the Hospital Staff on "[p]articipat[ion] in the . . . resident teaching program if requested to [do so]." Administrative Record ("A.R.") at 453. This, coupled with the fact that all physician participants in the non-hospital residency teaching program were members of the Hospital Staff (and had executed a separate document by which

they agreed to abide by the By-Laws, *see* A.R. at 444 (Release Agreement)), means that each of those physician participants was bound by written agreement to "[p]articipate in the . . . resident teaching program if requested to [do so]." Second, the Hospital maintained written employment agreements with its residents; those employment agreements obligated the Hospital to provide the residents with certain salaries and benefits. *See* Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue ¶¶ 8, 9. Third, in 2002 the Hospital entered into a written Memorandum of Understanding with representatives of the non-hospital settings in which the parties purported to "reiterate and confirm" the terms of their agreement for the participation of the non-hospital settings in the resident training program. *See id.* at ¶ 23.

**B.     Procedural Background.**

In 2002, a fiscal intermediary of the Secretary held that the Hospital was not entitled to reimbursement for the fiscal year 1999 and 2000 medical education costs of its family practice residents during the time those residents spent rotating to non-hospital settings. *See* Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue ¶ 19. The Hospital appealed to the Secretary's Provider Reimbursement Review Board (the "Board"). *See id.* at ¶ 24. The Board held a hearing on June 27, 2003; on May 6, 2004, it upheld the intermediary's disallowances. *See id.* at ¶¶ 24, 27. It did so on the basis of its determination that the Hospital had not complied with the "written agreement" requirement of 42 C.F.R. §§ 413.86(f)(4)(ii), 412.105(f)(1)(ii)(C) (1999 & 2000). *See id.* at ¶ 27.

The Hospital subsequently brought this action and, on February 28, 2005, moved for summary judgment [docket number 14]. On April 27, 2005, the Secretary filed his cross-motion for summary judgment [docket number 16]. On May 18, 2006, the undersigned accepted transfer

of the cross-motions for summary judgment for decision.  *See* Local Civil Rule 40.6(a).

An accompanying order denies the Hospital's summary judgment motion and grants the Secretary's motion.

## II. ANALYSIS

A.     **Standard of Review and Applicable Law.**

1.     **Standard of Review.**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "There is a genuine issue as to a material fact 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dunaway v. International Bhd. of Teamsters*, 310 F.3d 758, 761 (D.C. Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

2.     **The Relevant Reimbursement Statute.**

The Medicare Act (the "Act"), 42 U.S.C. § 1395 *et seq.*, provides – among other things – rules for the reimbursement of certain costs incurred by hospitals that operate certain medical residency training programs.  During the relevant time period (1999-2000), the Act required that the Secretary, in calculating those reimbursements, "shall . . . count[]" the time that participants in such a program spent training in non-hospital settings, *if* two conditions pertained: (1) the time was spent in "patient care" activity and (2) the sponsoring hospital "incur[red] all, or substantially all, of the costs for the training program in that setting." 42 U.S.C. § 1395ww(d)(5)(B)(iv) (regarding the reimbursement of "indirect costs of medical education"),

(h)(4)(A), (E) (regarding the reimbursement of "direct graduate medical education costs") (1999 & 2000).[1]

### 3. The Secretary's Regulations in Connection with the Relevant Reimbursement Statute.

The Secretary implemented parallel regulations in connection with the provisions of the reimbursement statute. With regard to the reimbursement of "direct graduate medical education costs" (and during the relevant time period), the regulation read:

---

[1] The full text of the relevant statutory provisions are as follows: For the reimbursement of "indirect costs of medical education":

> Effective for discharges occurring on or after October 1, 1997, all the time spent by an intern or resident in patient care activities under an approved medical residency training program at an entity in a nonhospital setting shall be counted towards the determination of full-time equivalency if the hospital incurs all, or substantially all, of the costs for the training program in that setting.

42 U.S.C. § 1395ww(d)(5)(B)(iv); For the reimbursement of "direct graduate medical education costs":

> (A) *Rules.* The Secretary shall establish rules consistent with this paragraph [i.e., paragraph (4) of subsection 1395ww(h)] for the computation of the number of full-time-equivalent residents in an approved medical residency training program.
>
> . . . .
>
> (E) *Counting time spent in outpatient settings.* Such rules shall provide that only time spent in activities relating to patient care shall be counted and that all the time so spent by a resident under an approved medical residency training program shall be counted towards the determination of full-time equivalency, without regard to the setting in which the activities are performed, if the hospital incurs all, or substantially all, of the costs for the training program in that setting.

42 U.S.C. § 1395ww(h)(4)(A), (E).

> For portions of cost reporting periods occurring on or after January 1, 1999, the time residents spend in [non-hospital settings] in connection with approved programs may be included in [calculating] a hospital's resident count if the following conditions are met:
>
> > (i) The resident spends his or her time in patient care activities.
> >
> > (ii) The written agreement between the hospital and the nonhospital site must indicate that [1] the hospital will incur the cost of the resident's salary and fringe benefits while the resident is training in the nonhospital site and [2] the hospital is providing reasonable compensation to the nonhospital site for supervisory teaching activities. The agreement must indicate [3] the compensation the hospital is providing to the nonhospital site for supervisory teaching activities.
> >
> > (iii) The hospital must incur all or substantially all of the costs for the training program in the nonhospital setting . . . .

42 C.F.R. § 413.86(f)(4)(i)-(iii) (1999 & 2000); *see also* 42 C.F.R. § 412.105(f)(1)(ii)(C) (1999 & 2000) (applying the same standard with regard to the reimbursement of "indirect medical education costs").

### 4. The Congressional Moratorium on Certain Reimbursement Disallowances.

In 2003, Congress enacted the Medicare Prescription Drug, Improvement and Modernization Act of 2003, Pub. L. No. 108-173. Section 713 of that act provides:

> *During the one year period beginning on January 1, 2004*, for purposes of [calculating the reimbursement owed hospitals for medical residents training in non-hospital settings], the Secretary shall allow all hospitals to count residents in . . . family practice programs . . . , without regard to the financial arrangement between the hospital and the teaching physician practicing in the non-hospital site to which the resident has been assigned.

(Emphasis added). The Secretary, through the Centers for Medicare and Medicaid Services, interpreted Section 713 to impose a moratorium on reimbursement disallowances of the type relevant here for (1) all training that occurred in calendar year 2004 and (2) all training that occurred before 2004, if the reimbursability of that training was determined by one of the Secretary's fiscal intermediaries during 2004. *See* Appellant's Opening Br., Ex. 3 (Centers for Medicare and Medicaid Services' One Time Notification Manual, Publication 100-20, Transmittal Number 61 (Mar. 12, 2004)). The Secretary interpreted Section 713 not to apply to decisions made by the Secretary's Provider Reimbursement Review Board during 2004, unless one of the above two conditions applied. *See id.*; Appellee's Opening Br. at 3-4, 37-39.

**B.    Application of the Standard of Review and Applicable Law.**

The Medicare Act did not bar the Secretary from enforcing the "written agreement" regulatory requirement; rather, it required the Secretary to limit reimbursements to eligible reimbursees and authorized (actually, again required) the Secretary to use his regulatory authority to achieve that end. Section 713 of the Medicare Prescription Drug, Improvement and Modernization Act of 2003, Pub. L. No. 108-173, by its own terms applied only "[d]uring the one year period beginning on January 1, 2004" and thus not to the 1999 and 2000 rotations at issue here. And, substantial evidence supports the Secretary's determination that the Hospital did not here comply with the given "written agreement" requirement.

    **1.    Validity of the Regulatory "Written Agreement" Requirement.**

During the time period here relevant (1999 and 2000), the Medicare Act required that the Secretary "prescribe such regulations as may be necessary to carry out the administration of [among other things, the relevant reimbursement provisions]." 42 U.S.C. § 1395hh(a)(1) (1999

& 2000). The Act also barred the Secretary from making payments "to any provider [e.g., a hospital] unless it has furnished such information as the Secretary may request in order to determine the amounts due such provider . . . .." 42 U.S.C. § 1395g(a) (1999 & 2000). Accordingly, the Secretary possessed the authority to impose a "written agreement" requirement to ensure that reimbursement flowed only to those entities meeting, for example, the requirement that reimbursement be limited to hospitals that "incur[red] all, or substantially all, of the costs for the training program in that setting." 42 U.S.C. § 1395ww(d)(5)(B)(iv), (h)(4)(A), (E) (1999 & 2000).

The Hospital argues that the "shall . . . allow" language of the relevant reimbursement provisions, 42 U.S.C. § 1395ww(d)(5)(B)(iv), (h)(4)(A), (E) (1999 & 2000), trumps the above-cited authorizing provisions. The "shall . . . allow" language, however, is no more mandatory than the "shall prescribe such regulations" language of Section 1395hh(a)(1) or the direction of Section 1395g(a) that "no [reimbursement] payments shall be made to any provider [e.g., a hospital] unless it has furnished such information as the Secretary may request in order to determine the amounts due such provider . . . ." Additionally, the Secretary's argument would prove too much, foreclosing here the application of any of a host of requirements imposed by the Secretary to ensure the orderly administration of the Medicare program. *See, e.g.*, 42 C.F.R. § 488 *et seq.* (1999 & 2000) (imposing requirements for provider "participation in or coverage under" Medicare program); 42 C.F.R. § 482 *et seq.* (1999 & 2000) (additional "conditions of [hospital] participation" in Medicare program); 42 C.F.R. § 489 *et seq.* (1999 & 2000) (additional "conditions of participation"); 42 C.F.R. §§ 412.52, 413.20; 413.24 (1999 & 2000) (collectively, imposing certain record-keeping and cost-reporting requirements on Medicare

hospital providers).

### 2. Applicability of Section 713 of the Medicare Prescription Drug, Improvement and Modernization Act of 2003.

Section 713 of the Medicare Prescription Drug, Improvement and Modernization Act of 2003, Pub. L. No. 108-173, applied only during "the one year period beginning on January 1, 2004." The Hospital argues that Section 713 applies because the Secretary's Provider Reimbursement Review Board decided the Hospital's appeal in 2004. Section 713, however, is most naturally read to apply only to rotations that occurred in 2004. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.").[2]

### 3. Satisfaction of the "Written Agreement" Requirement.

The disputed regulations required that the Hospital maintain a "written agreement" with the non-hospital settings to which its residents rotated; the regulations further required that that agreement indicate, among other things, "the compensation the hospital is providing to the nonhospital site for supervisory teaching activities." 42 C.F.R. § 413.86(f)(4)(i)-(iii) (1999 & 2000). The Hospital first points to its Bylaws and the written employment contracts it maintained with its residents. These, however, are not agreements with the non-hospital settings. Additionally, they do not indicate the compensation the non-hospital site would receive for supervisory teaching activities. At most, they (or, more particularly, the Bylaws coupled with the agreement of Hospital Staff to abide by those Bylaws) indicate the compensation the physician

---

[2] The more "generous" interpretation advanced by the Secretary distinguishes decisions made by the Secretary's financial intermediaries from those made by his Provider Reimbursement Review Board. Secretary's Reply & Opposition at 22. That distinction appears arbitrary. The court need not, and does not, credit the Secretary's interpretation of Section 713.

participant would receive for providing the hospital the option of calling on him or her to participate in the residency program; they say nothing about what compensation the participating physician, once and if selected, would receive for his or her "supervisory teaching activities." The Hospital also points to a 2002 Memorandum of Understanding that it entered with representatives of the non-hospital settings. The Secretary's interpretation of the relevant regulations to require a contemporaneous written agreement, however, is reasonable and entitled to deference. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (requiring deference to an agency's interpretation of its regulations so long as the interpretation reasonably comports with the language and purpose of the regulation). Accordingly, substantial evidence supports the Secretary's determination that the Hospital failed to fulfill the "written agreement" requirement of 42 C.F.R. §§ 413.86(f)(4)(ii), 412.105(f)(1)(ii)(C) (1999 & 2000).

### III. CONCLUSION

For the foregoing reasons, an accompanying order denies the Hospital's motion for summary judgment and grants the Secretary's motion for summary judgment.

/s/

Louis F. Oberdorfer
UNITED STATES DISTRICT JUDGE

DATED: August 15, 2006